UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 17-34-HRW

PAUL W. AKERS, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

COLUMBUS LIFE INSURANCE CO., DEFENDANT.

This matter is before the Court upon Defendant Columbus Life Insurance Company's Motion for Summary Judgment [Docket No. 22]. The matter has been fully briefed by the parties [Docket Nos. 22-1, 25 and 26]. For the reasons set forth herein, the Court finds that Defendant is entitled to judgment as a matter of law.

I.

This case arises from the termination of a life insurance policy, Policy No. CM3264530 issued to Plaintiff Paul Akers on May 17, 1993 by Defendant Columbus Life Insurance Company ("Columbus Life"). A copy of the policy is part of the record at Docket No. 22.2.

A. The Policy

The policy is not whole life insurance policy, but, rather, a flexible premium life insurance policy. Columbus Life describes this species policy as follows:

> [This policy] provides for fixed premium payments
> throughout the duration of the policy, a flexible premium
> life insurance policy gives the insured the ability to pay
> various premium amounts throughout the life of the policy.
> The only caveat to this flexibility is that the insured must

> make sure that there is enough paid into the policy in
> premium payments to cover the monthly cost and expenses
> of insurance (collectively the "Cost of Insurance"). Thus,
> the insured has the flexibility to make large lump sum
> payments, increase premium payments in some months,
> decrease them in others, or even skip payments – so long as
> the cash balance in the policy is sufficient to cover each
> month's Cost of Insurance. Any amounts paid into the
> Policy exceeding the monthly Cost of Insurance create a
> cash value "savings" within the policy that earns interest on
> a tax deferred basis.

[Docket No. 22-1, pg. 1]. Plaintiff does not dispute this description.

The Policy identifies four situations that trigger the automatic lapse or termination of coverage:

> (1) You request that coverage terminate. (Such request will require a surrender of this policy.)
> (2) The insured dies. Some riders may provide benefits for other covered persons beyond the insured's death.
> (3) The policy matures.
> ***(4) The grace period ends.***

*Id.* (emphasis added).

It is the fourth scenario which is at issue in this case.

According to the policy, premium payments are "flexible." The insured could "choose the amount and frequency of payments." [Docket No. 22-2, at p. 8]. However, the Policy states that the "possib[ility] that coverage will expire prior to the maturity date if premiums paid are not large enough to continue coverage to that date." *Id.* at p. 3. The Policy explains that, if premiums paid are not sufficient to cover the Cost of Insurance, there will be a grace period of 61 days for the insured to remedy the deficiency. *Id.* at 9. If the deficiency is not remedied, the Policy lapses and is terminated. *Id.*

2

The "grace period under" the Policy is described as a "period of 61 days" from which there is "insufficient [cash] value" in the Policy to cover the monthly Cost of Insurance. [*Id.*]. If the Policy fell into grace, Akers was obligated to pay the "amount of premium needed to make the value sufficient ... at any time during the 61 day grace period." [*Id.*]. If the necessary premium needed to make the cash value sufficient was "not paid within the grace period, all coverage under [the Policy] will terminate without value at the end of the 61 day period." [*Id.*].

Each year, the insured receives a Flexible Premium Adjustable Life Annual Report ("Annual Report") that summarized the status of the Policy. Copies of the Annual Reports sent to Plaintiff from 2006 to 2015 are part of the record at Docket No. 22-4. The Annual Reports reveal the beginning and ending account value for the Policy each year, as well as the net cash value and monthly expense charges and deductions (Cost of Insurance) necessary to determine whether the Policy has sufficient value to maintain coverage. In addition, the Annual Reports contained a phone number for Client Services, should the insured have questions concerning his Policy. *Id.*

In his deposition, Plaintiff testified that although he received a copy of the Policy upon issuance in 1993, he has never read it. [Deposition of Paul Akers, pp.18, 94]. In addition, he testified that although he received the Annual Reports, he did not read them or "pay any attention" to them. *Id.* Plaintiff does not dispute this testimony. Yet he maintains that the independent agent who sold the policy, Luther Waldrop, did not explain to him the difference between a whole life policy and a flexible life policy. *Id.* As

3

Waldrop is not a party to this action, nor has his deposition, if taken, been filed in the record, one may only speculate as to what he may, or may not have, said.

## B. The Grace Periods, Thrice Commenced

Despite Plaintiff's suggestion that he did not understand the nature of the specific type of policy he purchased, his actions throughout the twenty-plus years he had it demonstrate otherwise.

In 2013, Plaintiff's policy went into the grace period described *supra*. By letter dated November 15, 2013 to Plaintiff from the Client Services Department at Colombus Life, he was informed that his policy lacked sufficient value and that, in order for his coverage to continue, a payment of $444.70 was to be received by December 17, 2013. [Docket No. 22-5]. The letter also explained that automatic withdrawals from Plaintiff's checking account would be discontinued until the payment was received. *Id.* Plaintiff paid the amount due and the Policy did not lapse..

The grace period was triggered again in 2014. Again, Columbus notified Plaintiff by letter, and, again, Plaintiff paid and, again, his policy did not lapse. [Docket No. 22-6].

The Policy went into the grace period, for the third time, on April 17, 2016. Columbus Life notified Plaintiff of this fact in two separate writings. Plaintiff was sent an Annual Report dated May 17, 2016, showing a Cash Surrender Value of $233.67, along with the Cost of Insurance for each month. As shown on the Annual Report, Akers' Policy had an insufficient cash value because $233.67 was less than the Cost of

4

Insurance for the month of April ($234.77). [Docket No. 22-8, p. 2]. The Annual Report included the statement; "your policy is in its Grace Period in accordance with the terms of [the] policy." *Id.* The report also provided that "no monthly deductions and expense charges shall be applied to [his] policy's Account Value until [Columbus Life] receive[s] a premium sufficient to maintain coverage in force." [*Id.*].

As was the case with the prior Annual Reports and the Policy itself, Akers testified that he received this Annual Report, but never read it. [Deposition of Paul Akers, p. 50].

By letter dated May 18, 2016, Columbus Life informed that his Policy "does not have sufficient value to continue coverage and is now in its grace period." [Docket No. 22-7]. He was instructed to "send a payment of $247.52 along with the enclosed payment stub by 06/18/2016" to maintain coverage under the Policy and that "[i]f this full payment amount is not received by 06/18/2016, your policy will terminate without value and all insurance coverage [will] end." *Id* The letter further advised Plaintiff that "[t]he Pre-Authorized withdrawals from your checking account have been discontinued" and would only be resumed upon receipt of the required payment by the June 18, 2016 due date. *Id.* Notably, typed in bold print across the top of the letter: "IMPORTANT NOTICE *** YOUR POLICY IS ABOUT TO LAPSE ***." *Id.*

Plaintiff testified that he received the letter but he did "nothing" with it and never read it. [Deposition of Paul Akers, p. 52]. Plaintiff does not dispute this testimony. He concedes that he "should have known better." [*Id.* at p. 65].

5

Indeed, Plaintiff testified that he was completely unaware of any problem with the Policy until he received a notice from Columbus Life stating that the Policy had lapsed for lack of payment on June 18, 2016. *Id.* at p. 59. A notice, dated the same day, was sent to Plaintiff in this regard. [Docket No. 22-9].

At some point thereafter, Plaintiff called his daughter, Brenda Cordial, who reviewed June 18, 2016 notice as well as the letter of May 18, 2016 and knew that Plaintiff "was supposed to mail a check" and had missed his deadline for doing so. [Deposition of Brenda Cordial, pp. 19-20]. She testified that the letter was "absolutely clear". *Id.*

## II.

The following April, Paul Akers filed this lawsuit against Columbia Life, asserting claims for: (1) declaration that Columbus Life wrongfully terminated the life insurance policy; (2) specific performance; (3) unjust enrichment; (4) violation of the Kentucky Insurance Code, KRS 3014-15; (5) breach of contract; and (6) breach of the implied duty of good faith and fair dealing. [Docket No. 1-1].

Columbia Life seeks summary judgment as to vall claims alleged herein.

## III.

In order to sustain a motion for summary judgment, a Court it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute [.]" Fed.R.Civ.P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## IV.

### A. Breach of Contract

The Court will first address Plaintiff's claim of breach of contract. As this is a diversity action, Kentucky state law applies to the merits of this case. *Erie Railroad v. Tompkins*, 303 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Kentucky law, the interpretation of an insurance contract is a question of law for the Court to decide. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky.2002); *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d

552, 556 (Ky.2006). "In construing a contract, a court's primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself." *Logan Fabricom, Inc. v. AOP P'ship LLP*, 2006 WL 3759412, *2 (Ky.Ct.App. December 22, 2006). "[I]n the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky.2003) (quotation and citation omitted). *See also York v. Kentucky Farm Bureau Mutual Ins. Co.*, 156 S.W.3d 291, 293 (Ky.2005) ("The clear and unambiguous words of an insurance contract should be given their plain and ordinary meaning.").

In his Complaint, Plaintiff alleges that Columbus Life breached its contract, i.e. the Policy, by "fail[ing] to notify [him] of in a timely fashion of his declining account value and inadequacy of his monthly premium amounts" and "misle[ading] [him] regarding the onset of the grace period." [Docket No. 1, ¶¶ 47-48].

With regard to the notification, the Policy clearly states that Columbus Life "shall send [Plaintiff] at least once each year a report which shows the current cash surrender value, premiums paid and charges made since the last report, and outstanding policy loans." [Docket No. 22-2 p. 8 (Annual Report Provision)].

Columbus Life did, in fact, send these reports to Plaintiff. Plaintiff admits he received these reports each year since the purchase of his policy but did not read them.

It is undisputed that the Annual Reports, each a page long, include financial information about Plaintiff's Policy, including the cash value, monthly premiums,

8

monthly deductions and expense charges (Cost of Insurance), as well as the ending account balance for each monthly anniversary date of the Policy. [Docket No. 22-8]. The Annual Reports clearly establish that the value of his Policy steadily declined from 2007 until 2016. *Id.*

Casting a rather large shadow of doubt over Plaintiff's claim that he was unaware of the precarious nature of his Policy is the fact that his failure to pay sufficient premiums triggered the Policy's "grace period" on three separate occasions, in 2013, 2014 and, finally, in 2016. In 2013 and 2014, Plaintiff paid the required premium and his Policy continued rather than lapsing.

Moreover, had Plaintiff simply reviewed the single page reports, he would have been aware that his Policy was losing value each year.

Regardless of what Plaintiff did or did not do, it is undisputed that, pursuant to the terms of the Policy, Columbus Life sent the reports and Plaintiff received them, thereby absolving Columbus Life of breaching the Policy in this regard.

Plaintiff was also notified, pursuant to the terms of the Policy, of its impending lapse and ultimate termination. The Policy, "all coverage under [the Policy] will terminate without value at the end of the 61 day period" if the necessary premium is not paid within the same 61- day period. [Docket No. 22-2, p. 9]. It is undisputed that the Policy had an insufficient value on April 17, 2016 and the 61-day Grace Period began to run on that date.

9

The May 18, 2016 letter also served as notification of an issue and explicitly explained that an additional premium payment of $247.52 was due by the end of the grace period on June 18, 2016. [Docket No. 22-7].

However, Plaintiff did not read his Policy or the communications regarding. Yet, Plaintiff's failures do not establish a breach of contract on behalf of Columbus Life. Rather, pursuant to the terms of the Policy, the termination for nonpayment on June 18, 2016 was proper.

As for Plaintiff's argument that he believed that Columbus Life would continue to make automatic withdrawals from his checking account during the Grace Period and that this belief, somehow, renders Columbus Life for a breach of contract, it is without merit. First, the Policy does not provide that automatic premium withdrawals must continue during the grace period. If it is not a term of the contract, it cannot be breached. Also, the notification letters of 2013 and 2015 and the May 18, 2016 letter, specifically states that "**[t]he Pre-Authorized withdrawals from [Plaintiff's] checking account have been discontinued**." [Docket No. 22-7] (emphasis in original)]. Again, had Plaintiff read these letters, he would have known.

In a final attempt to salvage his claim, Plaintiff contends that the Policy is ambiguous with regard to when the grace period begins.

"A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky.Ct.App.2002). "[T]he mere fact that a party attempts to muddy the

water and create some question of interpretation does not necessarily create an ambiguity. " *Id.* (*quoting Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky.1997)).

The Policy's provisions regarding the grace period are crystal clear. "A grace period of 61 days will begin on any monthly anniversary day when there is an insufficient value" in the Policy. [Docket 22-2, p. 9]. "Insufficient value" is defined as when "the net cash surrender value on the monthly anniversary day is less than the sum of the monthly expense charges and monthly deduction...." *Id.* The Court finds no ambiguity in this language.

In an effort to "muddy the waters", Plaintiff suggests the notification letters sent to him were confusing with regard to the grace period. However, it is well established that absent an ambiguity, the four corners of the contract define the limit of interpretation. *Secura Insurance Co., v. Gray Construction, Inc.*, 717 F.Supp.2d 710 (E.D. Ky. 2010). In other words, only where a Court finds ambiguity may it consider patrol or extrinsic evidence involving the circumstances surrounding the contract . *Id.* (internal citations omitted). Such is not the case here.

It bears mentioning, again, that Plaintiff admitted he received the letters but did not read them. He concedes that if he had simply read the letter, he would have known that his premium payments were no longer going to be automatically deducted from his checking account and that he needed to tender an additional payment or his policy would lapse. [Deposition of Paul Akers, pp. 55-56]. However, he failed to read the letters and admits that he "should have known better." *Id.* at p. 65. His own actions belie any claim

11

of confusion, ignorance or ambiguity and, most glaringly, breach of contract. At best, his claim is disingenuous.

### B. Other claims

In his Complaint, Plaintiff also asserts claims for specific performance, unjust enrichment, violation of the Kentucky Insurance Code and breach of the implied duty of good faith and fair dealing, as well a declaratory judgment. However, in his response to Columbus Life's dispositive motion, Plaintiff makes no mention of these claims and advances no argument in support of them, thereby abandoning them.

### V.

Plaintiff has failed to demonstrate that any genuine issues of material fact exist in the record. As such, Defendant is entitled to judgment as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Columbus Life Insurance Company's Motion for Summary Judgment [Docket No. 22] be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This __19th__ day of __July__, 2018.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge